UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

BARBARA LOUISE CREECH,           )
                                 )
         PLAINTIFF,              )
                                 )
vs.                              )    CASE NO. 12-CV-161-FHM
                                 )
CAROLYN W. COLVIN, Acting        )
Commissioner of the Social Security )
Administration,[1]               )
                                 )
         DEFENDANT.              )

## OPINION AND ORDER

Plaintiff, Barbara Louise Creech, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff Barbara Louise Creech's application was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Lantz McClain was held June 11, 2010. By decision dated June 25, 2010, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on January 27, 2012. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

1

Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

For the reasons discussed below, the Court AFFIRMS the decision of the Commissioner.

## Background

Plaintiff was 47 years old on the alleged date of onset of disability and 49 years old on the date of the denial decision. She has a high school education and her past relevant work includes accounting clerk, fast food worker, and cashier. Plaintiff claims to have been unable to work since July 1, 2008, due to bipolar disorder and stomach problems. [R. 126].

## The ALJ's Decision

The ALJ determined that the Plaintiff has severe impairments relating to gastroparesis, Barrett's esophagus, and bipolar disorder. [R. 19]. The ALJ found that the

Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) except she is limited to simple repetitive tasks and having no more than incidental contact with the public.[3]  [R. 21].

Although Plaintiff was unable to perform her past relevant work, based on the testimony of the vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform. [R. 23-24].  Accordingly, the ALJ found Plaintiff was not disabled.  The case was thus decided at step five of the five-step evaluative sequence for determining a claimant is disabled.  *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that the ALJ: 1) failed to properly consider the non-medical source opinions; 2) failed to perform a proper determination at step five of the sequential evaluation process; and 3) failed to perform a proper credibility determination.

## Analysis

### Consideration of Non-Medical Source Opinions

Plaintiff raises several issues under this heading.  She contends that: the ALJ ignored the GAF scores relating to her mental impairment; ignored the vocational expert's testimony which was unfavorable to his position; and failed to weigh the opinions of

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. Social Security Ruling (SSR) 83-10; see CFR § 404.1567(b).

Plaintiff's medical and non-medical sources. The court finds no error in these categories.

Plaintiff asserts that the case should be remanded because the ALJ ignored the Global Assessment of Functioning (GAF) scores of 48. Citing *Andersen v. Astrue,* 319 Fed.Appx. 712 (10th Cir. 2009)(unpublished), Plaintiff argues that the ALJ must supply "good reasons" for rejecting consideration of the GAF score. [Dkt. 17, p. 1].[4]

A GAF score is a subjective rating on a one hundred point scale, divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. *See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders,* 32, 34 (Text Revision 4th ed. 2000)("DSM-IV-TR). A GAF score in the range of 41-50 indicates: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34. The DSM-IV-TR instructs that the GAF scale has two components: the first part covering symptom severity, and the second part covers functioning. If <u>either</u> the symptom severity <u>or</u> the level of functioning falls within the range, a GAF within that range should be assigned. And, where the symptom severity and level of functioning are discordant, the GAF rating should reflect the worse of the two. *Id.* at 32-33. It is clear from the GAF definition, that the GAF score standing alone is not necessarily an indicator of the ability to work. Furthermore, the Tenth Circuit has explained it is not necessary for the ALJ to specifically mention or adopt every GAF score in his decision. *See Luttrell v. Astrue,* 453 Fed.Appx 786, 791-92 (10th Cir. 2011), *Butler v. Astrue,* 412 Fed.Appx 144, 147 (10th Cir.

---

[4] The *Anderson* case does not address or even mention GAF scores.

2011), *Holcomb v. Astrue,* 389 Fed.Appx. 757, 759 (10th Cir. 2010)(GAF scores taken alone do not establish an impairment serious enough to preclude an ability to work and when the scores are the opinion of providers who are not acceptable medical sources, they cannot by themselves establish a medically determinable impairment, constitute a medical opinion, or be considered the opinions of a treating source).  A GAF score is but one piece of information in the record that the ALJ must consider.

The record reflects six GAF scores.  [R. 297, 299, 334, 407, 482, 487].  Of the six GAF scores two are from acceptable medical sources – Dr. Syam Kumian, M.D. and Dr. Melinda A. Shaver, Psy.D.  Plaintiff was issued a GAF score of 65 by Dr. Kumian on May 19, 2008.[5]  [R. 297].  On November 19, 2008, mental consultative examiner, Dr. Melinda A. Shaver, Psy.D., assessed a GAF score of 48.  [R. 299].  The remaining four GAF scores were prepared by counselors at Grand Lake Mental Health Center who are not considered acceptable medical sources.[6]  [R. 334, 407, 482, 487].

The ALJ noted that Plaintiff underwent a psychological assessment on November 6, 2008, which was performed at Grand Lake Mental Health Center.  [R. 22, 343-347].  The ALJ also noted that Plaintiff underwent a psychological consultative examination on November 19, 2008, which was performed by Dr. Melinda A. Shaver, Psy.D., who indicated Plaintiff's prognosis was emotionally good, her symptoms appear to be under control with

---

[5] The GAF score issued by Dr. Kumian on May 19, 2008, is before Plaintiff's alleged date of onset of July 1, 2008.

[6] Licensed clinical social workers are considered "other sources," as defined in 20 C.F.R. § 404.1513(d) and 416.913(d), who may provide evidence useful in determining impairment severity and the functional effect of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). For purposes of this discussion, the court will assume, without deciding, that licensed professional counselors can also be considered "other sources," as defined in 20 C.F.R. § 404.1513(d) and 416.913(d)

her medication, that she is an intelligent woman who has persevered despite a hard life, she was able to remain employed at the same position for approximately 8 years, and she is now dedicated to the care of her grandson. [R. 22, 299-302]. The ALJ also noted Plaintiff's treatment with Grand Lake Mental Health Clinic and that on June 16, 2009, she was noted to be doing well when medication compliant. [R. 22]. The ALJ's decision thus reveals that he considered the evidence related to Plaintiff's mental health treatment.

The ALJ is required to consider all relevant evidence in the record, including opinions from medical and non-medical sources who have treated the claimant. SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006). But an ALJ is not required to discuss every piece of evidence in the record. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Since the decision reflects that the ALJ considered the mental health records, the court finds no error in the ALJ's failure to discuss Plaintiff's GAF scores.

Plaintiff also asserts that the vocational expert testified that a GAF score of 48 would prohibit sustaining work. Plaintiff argues that the ALJ ignored this testimony which was unfavorable to the ALJ's position. [Dkt. 15, p. 3]. At the hearing Plaintiff's counsel read the DSM-IV-TR definition of the GAF range from 41 to 50 and asked if those attributes were added to the hypothetical question would the vocational expert's response to the hypothetical change. The vocation expert said it would. [R. 45-46]. Plaintiff's attorney also asked if the limitations contained in Exhibit 7F[7] were "consistent with a global assessment of function of 40 to 50." [R. 47]. The vocational expert said they were not. *Id.* The court finds no error in the ALJ's failure to adopt or discuss the vocational expert's testimony

---

[7] Exhibit 7F is the Mental RFC form completed by the State Disability Determination Services' reviewing psychologist. [R. 311-313].

6

about his interpretation of a GAF. As explained above the GAF assigns a single score to a person's psychological, social, or occupational functioning. The GAF score does not purport to express specific work-related limitations. Nothing with the vocational expert's testimony identifies what work-related functional limitations were being considered in relation to the GAF. Since the GAF was not tied to any work-related limitations, the vocational expert's general testimony about the GAF appears to be beyond the witness's expertise as a vocational expert.

Plaintiff also asserts that the ALJ failed to properly weigh the medical and non-medical source evidence. Plaintiff complains that the ALJ adopted the non-treating non-examining sources from the State agency, but erred by not weighing these opinions or explaining how he considered them. The ALJ's decision was in accord with the opinions of these experts, accordingly the weight given to these opinions is obvious. Further, since these experts expressed the opinion that Plaintiff is capable of working, Plaintiff was not harmed by the ALJ's failure to discuss those opinions.

## **Step Five - Determination**

Plaintiff again alleges several reversible errors under this heading. Plaintiff argues: the GAF score is medically determinable and should have been included in the hypothetical to the vocational expert; no consideration was given for Plaintiff's need for frequent bathroom breaks due to ulcerative colitis with chronic diarrhea; and the ALJ must consider PRT findings in her hypothetical to the vocational expert.

### Hypothetical and GAF Score

Plaintiff seems to argue that a GAF score is a medically determinable impairment.

[Dkt. 15, p. 4]. A GAF score is not an impairment or a limitation. As a result the court finds the ALJ did not err in failing to include the GAF score in the hypothetical question.

### Bathroom Breaks

Plaintiff argues that the ALJ failed to include Plaintiff's need for frequent bathroom breaks in the hypothetical questions posed to the vocational expert. Plaintiff has a history of ulcerative colitis with chronic diarrhea and occasional fecal incontinence. [Dkt. 15, p 4-5]. The medical evidence contains notations the Plaintiff has occasional loose stools and chronic diarrhea. [R. 205, 253, 288, 303, 344, 434, 483]. However, the record also indicates that the Plaintiff has not received treatment for abdominal problems since 2009. [R. 22, 393]. A colonoscopy and an endoscopy were performed on January 3, 2007. The colonoscopy was negative for colitis. [R. 368, 374]. The endoscopy revealed Plaintiff had gastroesophageal reflux with the recommendation for anti-reflux treatment. [R. 370]. Subsequent endoscopies performed on May 17, 2007, [R. 383], and June 16, 2007, [R. 379], were similar in diagnosis and treatment. The ALJ noted the lack of ongoing treatment for Plaintiff's gastric problems, that she had not been seen in over a year, and that although Plaintiff complains of vomiting and diarrhea, she is gaining weight. [R. 22]. Hypothetical questions need only reflect impairments and limitations that are borne out by the evidentiary record. *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996). The record does not support Plaintiff's need for frequent bathroom breaks during the time frame under consideration, July 1, 2008, to June 25, 2010.

### PRT Findings in Hypothetical Question

Plaintiff contends that the ALJ erred by failing to consider PRT findings in the hypothetical to the vocational expert. Plaintiff did not support that assertion with any

8

reference to the record. As a result the court cannot discern the basis of Plaintiff's argument. It is Plaintiff's duty on appeal to support her arguments with references to the record and to tie relevant facts to her legal contentions. The court will not "sift through" the record to find support for the claimant's arguments. *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir.1992), *United States v. Rodriguiez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997)(appellants have the burden of tying the relevant facts to their legal contentions and must provide specific reference to the record to carry the burden of proving error). To the extend Plaintiff is arguing that the ALJ failed to consider her mental impairments. the record does not support that contention. The RFC includes the limitations of performing simple repetitive tasks and having no more than incidental contact with the public. Those limitations are supported by the evaluation of the Disability Determination Service reviewing expert. R. 311-313.

## Credibility Determination

Much of Plaintiff's argument concerning the ALJ's credibility determination addresses the ALJ's use of stock boilerplate language. The Tenth Circuit has made it clear that in the absence of a more thorough analysis, the use of boilerplate language is not sufficient to support an ALJ's credibility determination. However, the Tenth Circuit has made it equally clear that when the ALJ provides specific reasons for his credibility determination and links the credibility determination to the evidence, the presence of boilerplate language will not require remand. *Cf. Boehm v. Astrue,* 2013 WL 541067 at *2 (10th Cir. 2013(rejecting the same argument advanced in this case in another appeal argued by Plaintiff's counsel), *Polson v. Astrue,* 2013 WL 238849 at *2 (10th Cir. 2013 (same), *Strickland v. Astrue,* 2013 WL 3935755 at *7 (10th Cir. 2012)(same). Moreover,

the Tenth Circuit "precedent 'does not require a formalistic factor-by-factor recitation of the evidence so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility.'" *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)) (ellipsis and brackets omitted).

Credibility determinations are peculiarly the province of the finder of fact, and the court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) An ALJ's credibility determination must be "closely and affirmatively linked" to substantial record evidence. *Hardman v. Barnhart,* 362 F.3d 676, 678-79 (10th Cir. 2004). The ALJ did just that. In his decision, the ALJ identified numerous reasons for rejecting claimant's testimony regarding her limitations, including lack of medical treatment since 2009 for abdominal pain; Plaintiff has guardianship of her 5 year old grandson and is able to care for the child; on November 6, 2008 the estimated length of Plaintiff's treatment was 6 to12 months; mental health records note Plaintiff does well when medication complaint; and function reports in the file indicate she functions well.

The court is satisfied that the ALJ's credibility findings are closely and affirmatively linked to substantial evidence. Therefore, the undersigned finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

## Conclusion

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the

decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 21st day of May.

*Frank H. McCarthy*

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE